PEOPLE v SHANK

Docket No. 321534. Submitted September 2, 2015, at Lansing. Decided
November 17, 2015, at 9:10 a.m. Leave to appeal sought.

Allan Wayne Shank pleaded guilty in the Presque Isle Circuit Court
to being a felon in possession of a firearm (felon-in-possession),
MCL 750.224f, and possession of a firearm during the commission
of a felony (felony-firearm), MCL 750.227b. The court, Scott L.
Pavlich, J., sentenced defendant as a fourth-offense habitual
offender, MCL 769.12, to 12 to 25 years in prison for the
felon-in-possession conviction and to a consecutive two years in
prison for the felony-firearm conviction. Defendant's minimum
sentence exceeded the applicable sentencing guidelines range.
Defendant filed a delayed application for leave to appeal, which
the Court of Appeals granted.

The Court of Appeals *held*:

In accordance with *People v Lockridge*, 498 Mich 358 (2015),
and *People v Steanhouse*, 313 Mich App 1 (2015), departure
sentences must be reviewed for reasonableness. When determin-
ing the reasonableness of a sentence, an appellate court must
determine whether the sentence violates the principle of propor-
tionality, under which the sentence imposed must be proportion-
ate to the seriousness of the circumstances surrounding the
offense and the offender. If there is a departure from the
sentencing guidelines, an appellate court's first inquiry should
be whether the case involves circumstances that are not ad-
equately embodied within the variables used to score the guide-
lines. A departure from the recommended range in the absence
of factors not adequately reflected in the guidelines should alert
the appellate court to the possibility that the trial court has
violated the principle of proportionality and thus abused its
sentencing discretion. Even when some departure appears to be
appropriate, the extent of the departure, rather than the fact of
the departure itself, may embody a violation of the principle of
proportionality. In this case, the trial court's sentencing depar-
ture centered on the substantial-and-compelling-reason stan-
dard that was later overturned by *Lockridge*. Accordingly, in
conformity with *Steanhouse*, the case had to be remanded to the

trial court for a hearing to determine what effect *Lockridge* would have had on defendant's sentence so that it could be determined whether any prejudice resulted from the erroneous use of the substantial-and-compelling-reason standard. Because defendant could be sentenced to a more severe sentence on remand, he could elect to forgo resentencing by providing the trial court with prompt notice of his intention to do so.

Remanded for further proceedings.

O'CONNELL, J., dissenting, would have affirmed. Defendant was not entitled to resentencing under *Lockridge*. If, as in this case, a defendant does not challenge the scoring of his or her offense variables at sentencing on the basis of *Alleyne v United States*, 570 US ___; 133 S Ct 2151 (2013), review is for plain error affecting the defendant's substantial rights. To be entitled to relief under plain-error review, a defendant must show that the error affected the outcome of the lower court proceedings. Under *Lockridge*, when a defendant does not preserve an *Alleyne* challenge and the trial court departs upward, the defendant cannot show prejudice from any error in scoring the offense variables in violation of *Alleyne*. It would defy logic to conclude that the trial court would have imposed a lesser sentence had it been aware that the guidelines were merely advisory when the court, in fact, departed from the guidelines to impose a higher sentence. The decision in *Steanhouse* was contrary to the precepts of stare decisis, and this Court must follow the decision in *Lockridge* even though *Steanhouse* decided the issue differently. The *Lockridge* court stated that no prejudice could result from the type of error involved in this case. Defendant could not show plain error; therefore, he was not entitled to relief. Defendant's due process and proportionality claims were also unavailing.

*Bill Schuette*, Attorney General, *Aaron D. Lindstrom*, Solicitor General, *Matthew Schneider*, Chief Legal Counsel, *Richard K. Steiger*, Prosecuting Attorney, and *Anica Letica* and *Linus Banghart-Linn*, Assistant Attorneys General, for the people.

*Laurel Kelly Young* for defendant.

Before: BORRELLO, P.J., and HOEKSTRA and O'CONNELL, JJ.

BORRELLO, P.J. Defendant, Allan Wayne Shank, appeals by delayed leave granted[1] his sentence following his guilty pleas to being a felon in possession of a firearm (felon-in-possession), MCL 750.224f, and possession of a firearm during the commission of a felony (felony-firearm) MCL 750.227b. The trial court sentenced him as a fourth-offense habitual offender,[2] MCL 769.12, to 12 to 25 years' imprisonment for his felon in possession conviction and a consecutive term of two years' imprisonment for his felony-firearm conviction. In consideration of our recent ruling in *People v Steanhouse*, 313 Mich App 1; 880 NW2d 297 (2015), we remand the matter to the trial court.

## I. FACTS

Police officers received disturbing information that Jerry Hilliard, a prison inmate, had sent an eight-year-old child a gift and card through Shank, who had been in prison with Hilliard and who has previous convictions of accosting minors for immoral purposes. During the investigation, officers discovered that Hilliard had requested that Shank take a photograph of the child posing in only a necklace. While executing a warrant, officers found a Winchester pump .22 caliber rifle in Shank's hall closet. Officers also found evidence that Shank had sent Hilliard a photograph of what appeared to be a pregnant seven-year-old child and discovered in Shank's photo album a photograph of a 5-year-old girl exposing her vaginal area. Shank denied that the photograph belonged to him.

Shank pleaded guilty to felon-in-possession and felony-firearm, and the prosecution dropped a charge

---

[1] *People v Shank*, unpublished order of the Court of Appeals, entered June 12, 2014 (Docket No. 321534).

[2] This status increased Shank's possible maximum term of imprisonment to life imprisonment. MCL 769.12(1)(b); MCL 750.227b(1).

of possession of child sexually abusive material, MCL 750.145c(4). The sentencing guidelines recommended a minimum sentence of 7 to 46 months' imprisonment for Shank's felon in possession conviction. The trial court decided to depart upward, instead sentencing Shank to 12 to 25 years' imprisonment. It gave several reasons for its departure, including that Shank did not have much rehabilitative potential given that he had been frequently incarcerated for reoffending, had violated probation and parole, and had received misconduct citations in prison. The trial court also relied on the concerning nature of Shank's noncriminal behavior. The trial court explained that Shank was "assisting his prison mates in making contact with young children outside the prison system. He's starting to groom children in spite of having served these long sentences . . . . There's been just no rehabilitation at all."

## II. STANDARDS OF REVIEW

This Court, in *Steanhouse*, considered the effect of *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015), on departure sentences. *Steanhouse* holds that under *Lockridge*, this Court must review a defendant's sentence for reasonableness. *Steanhouse*, 313 Mich App at 42, citing *Lockridge*, 498 Mich at 365, 392, which cited *United States v Booker*, 543 US 220, 261, 264; 125 S Ct 738; 160 L Ed 2d 621 (2005). Hence, when the trial court departs from the applicable sentencing guidelines range, this Court will review that sentence for reasonableness. *Lockridge*, 498 Mich at 392. However, as stated in *Steanhouse*, "The appropriate procedure for considering the reasonableness of a departure sentence is not set forth in *Lockridge*." *Steanhouse*, 313 Mich App at 42. After discussion of the approaches Michigan appellate courts should employ

when determining the reasonableness of a sentence, this Court adopted the standard set forth by our Supreme Court in *People v Milbourn*, 435 Mich 630; 461 NW2d 1 (1990). *Steanhouse*, 313 Mich App at 42-48.

### III. PRINCIPLE OF PROPORTIONALITY

Under *Milbourn*, "a given sentence [could] be said to constitute an abuse of discretion if that sentence violate[d] the principle of proportionality, which require[d] sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender." *Milbourn*, 435 Mich at 636; see also *Steanhouse*, 313 Mich App at 44-45. In accordance with this principle of proportionality, trial courts were required to impose a sentence that took "into account the nature of the offense and the background of the offender." *Milbourn*, 435 Mich at 651. As stated in *Milbourn*:

> Where there is a departure from the sentencing guidelines, an appellate court's first inquiry should be whether the case involves circumstances that are not adequately embodied within the variables used to score the guidelines. A departure from the recommended range in the absence of factors not adequately reflected in the guidelines should alert the appellate court to the possibility that the trial court has violated the principle of proportionality and thus abused its sentencing discretion. Even where some departure appears to be appropriate, the extent of the departure (rather than the fact of the departure itself) may embody a violation of the principle of proportionality. [*Id.* at 659-660.]

As set forth in *Steanhouse*, "[f]actors previously considered by Michigan courts under the proportionality standard included, among others, (1) the seriousness of the offense; (2) factors that were inadequately

considered by the guidelines; and (3) factors not considered by the guidelines . . . ." *Steanhouse*, 313 Mich App at 46 (citations omitted).

In this case, the trial court did not have the benefit of our Supreme Court's decision in *Lockridge* or this Court's decision in *Steanhouse*. Rather, the trial court's sentencing departure centered on the substantial-and-compelling-reason standard that was later overturned by *Lockridge*. Accordingly, in conformity with this Court's decision in *Steanhouse*, we must remand this matter to the trial court for a *Crosby*[3] hearing. "[T]he purpose of a *Crosby* remand is to determine what effect *Lockridge* would have on the defendant's sentence so that it may be determined whether any prejudice resulted from the error." *People v Stokes*, 312 Mich App 181, 200-201; 877 NW2d 752 (2015). Also, under *Stokes*, the defendant is provided with an opportunity to avoid resentencing by promptly notifying the trial judge that resentencing will not be sought. *Id.* at 201, quoting *Lockridge*, 498 Mich at 398.

We remand this case to the trial court to follow the *Crosby* procedure outlined in *Lockridge*. Because defendant may be sentenced to a more severe sentence, defendant "may elect to forgo resentencing by providing the trial court with prompt notice of his intention to do so. If notification is not received in a timely manner, the trial court shall continue with the *Crosby* remand procedure as explained in *Lockridge*" and *Steanhouse*. *Stokes*, 312 Mich App at 203 (citations and quotation marks omitted).

We remand the matter for further proceedings consistent with this opinion. We do not retain jurisdiction.

---

[3] See *Lockridge*, 498 Mich at 395-399, citing *United States v Crosby*, 397 F3d 103 (CA 2, 2005).

HOEKSTRA, J., concurred with BORRELLO, P.J.

O'CONNELL, J. (*dissenting*). Defendant, Allan Wayne Shank, is a serial sexual offender with eight felony convictions. After Shank engaged in a disturbing photograph exchange with an inmate, police searched his home and found firearms. His most recent convictions are felon in possession of a firearm, MCL 750.224f, and possession of a firearm during the commission of a felony, MCL 750.227b. The sentencing guidelines recommended a minimum sentence of 7 to 46 months' imprisonment. The trial court departed upward from this recommendation, sentencing Shank to 12 to 25 years' imprisonment for his felon in possession conviction and a consecutive term of two years' imprisonment for his felony-firearm conviction. Because I conclude that this Court need look no further than *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015), to resolve this case, I would affirm.

### I. STANDARD OF REVIEW

In *Lockridge*, the Michigan Supreme Court stated that this Court should review a trial court's sentence for reasonableness. *Id.* at 392.[1] The "reasonableness" review "merely asks whether the trial court abused its discretion . . . ." *Rita v United States*, 551 US 338, 351; 127 S Ct 2456; 168 L Ed 2d 203 (2007); see also *People v Steanhouse*, 313 Mich App 1, 44-48; 880 NW2d 297 (stating that a sentence may constitute an abuse of discretion if it violates principles of proportionality). A trial court abuses its discretion when its decision falls outside the range of reasonable and principled out-

---

[1] The *Lockridge* Court adopted the reasonableness standard from *United States v Booker*, 543 US 220, 261; 125 S Ct 738; 160 L Ed 2d 621 (2005). *Lockridge*, 498 Mich at 392.

comes. *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006).

## II. APPLICATION OF *LOCKRIDGE*

The *Lockridge* question in this case is whether Shank is entitled to resentencing. Shank contends on appeal that the trial court engaged in improper judicial fact-finding under *Alleyne v United States*, 570 US ___; 133 S Ct 2151; 186 L Ed 2d 314 (2013).[2] The answer to this question hinges on whether Shank, who failed to preserve an *Alleyne* claim in the trial court, has shown plain error. I conclude that *Lockridge* addresses the question in this case perfectly and answers it in the negative. Shank is not entitled to resentencing.

If a defendant does not challenge the scoring of his or her offense variables (OVs) at sentencing on *Alleyne* grounds, our review is for plain error affecting that defendant's substantial rights. *Lockridge*, 498 Mich at 392. In this case, Shank did not challenge the scoring of his OV scores on *Alleyne* grounds. Our review is for plain error.

To be entitled to relief under plain-error review, a defendant must show that the error affected the outcome of the lower court proceedings. *Id.* at 393. The *Lockridge* court aptly stated the application of the plain error doctrine in cases—like Shank's—in which the defendant did not preserve an *Alleyne* challenge below and the trial court departed upward:

> Because [the defendant] received an upward departure sentence that did not rely on the minimum sentence range from the improperly scored guidelines (and indeed, the

---

[2] In *Alleyne*, the United States Supreme Court held that "any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury." *Alleyne*, 570 US at ___; 133 S Ct at 2155.

trial court necessarily had to state on the record its reasons for departing from that range), *the defendant cannot show prejudice from any error* in scoring the OVs in violation of *Alleyne*. [*Id.* at 394 (emphasis altered).]

If a defendant's minimum sentence involved an upward departure, that defendant "necessarily cannot show plain error . . . ." *Id.* at 395 n 31. "It defies logic that the court in those circumstances would impose a lesser sentence had it been aware that the guidelines were merely advisory." *Id.*

In this regard, the *Steanhouse* Court's decision to remand in that case was contrary to the precepts of stare decisis. As in *Lockridge*, the trial court in *Steanhouse* departed upward from the recommended sentencing range. *Steanhouse*, 313 Mich App at 42. The defendant in *Steanhouse*, like the defendant in *Lockridge*, did not challenge the scoring of his OVs on *Alleyne* grounds. *Id.* The Court of Appeals in *Steanhouse* recognized that the defendant could not establish a plain error under *Lockridge*. However, the Court proceeded to review the defendant's sentence and remand for resentencing anyway, directly contrary to the language of *Lockridge* providing that the *Lockridge* defendant was not entitled to resentencing under the exact same circumstances.

I would follow *Lockridge* without declaring a conflict panel. The reason is simple—this Court need not convene a conflict panel to follow a rule articulated by the Supreme Court, even if a decision of this Court conflicts with the Supreme Court's decision. *Charles A Murray Trust v Futrell*, 303 Mich App 28, 49; 840 NW2d 775 (2013). Until the Supreme Court's decision is overruled by the Supreme Court itself, the rules of stare decisis require this Court to follow the Supreme Court's decision. *Paige v Sterling Hts*, 476 Mich 495, 524; 720

NW2d 219 (2006). This Court simply "does not have the authority to recant the Supreme Court's positions." *Murray Trust*, 303 Mich App at 49. Under the rule of stare decisis, this Court must follow a decision of the Supreme Court even if another panel of this Court decided the same issue in a contrary fashion. *Id.* Because *Steanhouse* ignored the clear directives of the Michigan Supreme Court, it is against the rules of stare decisis to follow the procedures in that case. I cannot in good conscience violate the rules articulated in *Lockridge*.

A remand under *United States v Crosby*, 397 F3d 103 (CA 2, 2005), is used to determine whether prejudice resulted from an error. *People v Stokes*, 312 Mich App 181, 200-201; 877 NW2d 752 (2015). The *Lockridge* court stated that no prejudice could result from the type of "error" involved in this case.[3] Shank cannot show plain error; therefore, he is not entitled to relief. I conclude that a *Crosby* remand is not appropriate or necessary in this case.

### III. DUE PROCESS

Shank also raises a due process issue, contending that the trial court may not consider his conduct of sending photographs of a young child to Jerry Hilliard, an inmate and sex offender, because the prosecution dropped the charge for possession of child sexually abusive material (child pornography).[4] The majority does not reach this issue because it concludes that remand is appropriate. Because I would not remand, I will address this issue.

---

[3] I am concerned about questions of judicial economy implicit in blindly affording *Crosby* remands to every sentencing question that is raised before this Court post-*Lockridge*, particularly when challenges to those sentences are unpreserved.

[4] See MCL 750.145c(4).

It is fundamentally unfair for the prosecution to drop a charge while engaging in plea negotiations, only to "resurrect it at sentencing in another form." *People v McGraw*, 484 Mich 120, 134; 771 NW2d 655 (2009). That is not what happened in this case.

In this case, the prosecution dropped a charge for possessing child sexually abusive material. In sentencing defendant, the trial court did not rely on defendant's possession of the sexually abusive photograph, but instead focused on how Shank's conduct—grooming an acquaintance's child and sending photographs of that child and an ostensibly pregnant seven-year-old to Hilliard, who was incarcerated for molesting children—showed that he had very little rehabilitative potential and posed a danger to the community. I conclude that the trial court did not violate Shank's due process rights.

### IV. PROPORTIONALITY

Shank also raises a proportionality question unrelated to the application of *Lockridge* and *Alleyne*—he contends that the trial court's lengthy sentence was not proportional because it was not justified by the circumstances of his crime. Again, I disagree.

Even when the sentencing guidelines were mandatory, the "key test" of a sentence was whether it was proportionate to the seriousness of the matter, rather than whether it strictly adhered to a guidelines range. *People v Milbourn*, 435 Mich 630, 661; 461 NW2d 1 (1990). "[P]unishment should be made to fit the crime and the criminal." *People v Babcock*, 469 Mich 247, 262; 666 NW2d 231 (2003). One purpose of the sentencing guidelines is to facilitate proportional sentences. See *People v Smith*, 482 Mich 292, 320-321; 754 NW2d 284 (2008) (MARKMAN, J., concurring).

The trial court stated extensive reasons for why Shank's sentence was proportional. It gave these reasons under the now-defunct label of "substantial and compelling reasons,"[5] but the fact that the sentencing guidelines are no longer mandatory does not negate that the trial court in this case did in fact consider the proportionality of its sentence. The trial court considered Shank's criminal history, his conduct leading to the charges in this case, and his failure to rehabilitate. Specifically, it found that Shank lacked rehabilitative potential. He was previously incarcerated for accosting minors, but his uncharged conduct raised serious concerns that he would continue to engage in that behavior. Shank violated his probation and parole, including by possessing firearms, and while he was imprisoned he engaged in poor behavior. And Shank continued to pose a danger to children and the community because he could not or would not be rehabilitated. Under these facts, I conclude that the trial court's sentence fell within the range of principled outcomes.

I would affirm.

---

[5] The trial court need no longer articulate substantial and compelling reasons to justify a departure from the sentencing guidelines. *Lockridge,* 498 Mich at 364-365. However, the trial court should still articulate reasons for why its sentence is more proportionate than a sentence within the guidelines range, even though these reasons need not be substantial and compelling. See *Rita,* 551 US at 356-357 (stating that when determining the reasonableness of a sentence, courts should consider the sentencing court's reasons for departing from the guidelines); *Gall v United States,* 552 US 38, 50; 128 S Ct 586; 169 L Ed 2d 445 (2007) (stating that a more significant departure will require more justification to be upheld as proportional than a minor departure).